IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZEFERINO OCAMPO FITZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| ELIZABETH VENEGAS NUÑEZ, | § | |
| EXECUTOR AND HEIR OF THE | § | |
| ESTATE OF DAVID VENEGAS | § | Civil Action No. 3:23-CV-02298-B |
| FRIAS, ALEJANDRO AGUILERA | § | |
| ROMAN, ALEXIS VENEGAS, GAEL | § | |
| ORDAZ, EDGAR MELENDEZ, | § | |
| ASCENSION QUIROZ, AND PETER | § | |
| ANGEL, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Elizabeth Venegas Nuñez, Executor and Heir of the Estate of David Venegas Frias ("Nuñez"), Alejandro Aguilera Roman, Alexis Venegas, Edgar Melendez, Armando Carlos Ascencion Quiroz, and Peter Angel (collectively, "Responding Defendants"[1])'s Amended Motion to Dismiss (Doc. 26). Having reviewed the briefing and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

---

[1] The Court vacated the Clerk's Entry of Default as to Armando Carlos and Gael Ordaz after Plaintiff notified the Court that "Armando Carlos" and "Ascencion Quiroz" refer to the same person. *See* Doc. 44, Mot. Vacate; Doc. 45, Order.  Plaintiff has not since filed a renewed request to enter default against Gael Ordaz, who is the sole defendant that has not moved to dismiss.

I.

BACKGROUND

A battle between musical bands, this lawsuit was launched to settle the question: who has priority use of the name "Los Yaguaru de Angel Venegas"? *See generally* Doc. 1, Compl. Plaintiff Zerefino Ocampo Fitz and Responding Defendants are all citizens and residents of Mexico. *Id.* ¶¶ 4–15. Fitz is the longtime manager of a band called "Los Yaguaru de Angel Venegas," also known as "Los Yaguaru." *Id.* ¶ 17. Angel Venegas ("Angel") is the founder of Los Yaguaru de Angel Venegas, which was formed more than 30 years ago. *Id.* ¶ 16. Los Yaguaru de Angel Venegas began performing in the United States in the 1990s and has toured continuously in the United States as early as 1998. *Id.*

Angel held all rights to the band's name and business until he passed them to his successor-in-interest, who then assigned the rights to Fitz in August 2014. *Id.* ¶ 17. Angel passed away in October 2014. *Id.* ¶ 22. Fitz claims that he owns four trademarks, each of which are registered with the Mexican trademark office, depicting variations of the Los Yaguaru name and logos ("Mexican Marks"). *See id.* ¶ 18. The oldest mark depicts the band's name "Los Yaguaru de Angel Venegas" in distinct curved word art. *Id.* This mark was registered with the Mexican trademark office on June 27, 1997, and renewed in 2017. *Id.* Angel, Angel's successor-in-interest, and Fitz have continuously used all four marks in connection to the band's live performances "since as early as 1998." *Id.* ¶ 21. The band today consists of many of the same band members originally led by Angel. *Id.* ¶ 22.

Responding Defendants are members of another musical band, which performs in the United States as "David Venegas Cachorro Presenta Angel Venegas y su Orquesta Con Sabor." *Id.* ¶ 24. However, "on occasion[] and more increasingly as of recently," they have advertised their

concerts under the same name as Fitz's band, "Los Yaguaru de Angel Venegas," while using the same logo as the Mexican Mark owned by Fitz. *Compare id.* ¶¶ 25–26 *with id.* ¶ 18. For example, Responding Defendants used a poster, advertising an October 20, 2023 concert in Irving, Texas, with the name "Los Yaguaru de Angel Vengas" and a "Yaguaru" logo resembling the mark Fitz claims to own. *Compare id.* ¶ 26 with *id.* ¶ 18. Another poster advertising Responding Defendants' concert in Fort Worth's Rodeo West is titled "Los Yaguaru de Angel Venegas." *Id.* ¶ 26.

Fitz and Responding Defendants' musical groups are alleged to market their music to "identical" markets, "i.e. the Latin music market of the United States." *Id.* ¶¶ 42, 44. Therefore, according to Fitz, Responding Defendants' use of the same band name has confused consumers in Texas as to what musical group is actually performing under the name "Los Yaguaru de Angel Venegas." *Id.* ¶¶ 26–28.

Defendant Nuñez owns a mark registered with the United States Patent and Trademark Office ("USPTO") called "Los Yaguaru de Angel Venegas" ("US Mark"). *Id.* ¶ 29, 36–37. She inherited ownership of the US Mark from her deceased father, David Venegas Frias ("David"). *Id.* ¶ 37; *see also* Doc. 1-2, Compl. Ex. B, 1. David and Angel were brothers. Doc. 1, Compl., ¶ 29. David applied for the US Mark in 2012, and the trademark registration was completed in 2020. *See* Doc. 1-1, Ex. A, 2. In his application for the US Mark, David asserted that he used the mark "Los Yaguaru de Angel Venegas" since as early as 1996 and that the mark was first used in commerce on July 24, 2012. *See* Doc. 1-1, Ex. A, 14 (final draft), 54 (proposing edit to use in commerce date). In support of his application, David represented to the USPTO that he had "full and legal rights to the exclusive use of 'Angel Venegas,' which [he] claim[ed] as [his] pseudonym, stage name." Doc. 1, Compl., ¶¶ 33–34.

Fitz asserts several claims against Defendants for their alleged use of the US Mark: false association[2] under the Lanham Act, 15 U.S.C. §1125(a)(1)(A), state trademark infringement and unfair competition, and cancellation of trademark registration under the Lanham Act, 15 U.S.C. § 1119. Doc. 1, Compl., ¶¶ 38–81. Fitz also asserts as an independent claim, an accounting of Defendants' profits. *Id.* ¶¶ 82–88. Responding Defendants moved to dismiss the Complaint, arguing the following: (1) Fitz lacks standing to bring his Lanham Act unfair competition claims, (2) the cancellation claim is insufficiently pled, (3) four claims are time-barred, and (4) the accounting "cause of action" must be dismissed as an equitable remedy and not a stand-alone claim. Doc. 26, Mot., 5–10. The Court addresses each argument in turn.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] While Fitz labels his first cause of action as federal trademark infringement and unfair competition, the Complaint expressly states his claim arises from Responding Defendants' use of a competing mark that "constitutes use of a . . . misleading description and representation of fact" under § 1125(a)(1)(A). Thus, the Court relies on the substance of Fitz's allegations and construes the Complaint as asserting a false association claim. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122, (2014) ("Section 1125(a) thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)"). False association claims are also referred to as false designation of origin claims. *See, e.g., Spicy Beer Mix, Inc. v. New Castle Beverage, Inc.*, No. CV 14-00720 SJO (JEMX), 2014 WL 12573409, at *4 (C.D. Cal. Oct. 10, 2014).

Fraud claims are subject to a heightened standard requiring the plaintiff to plead "with particularity the circumstances" surrounding the fraudulent claims alleged. FED. R. CIV. P. 9(b). "Rule 9(b) requires the complaint to set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). A pleading must nonetheless assert "specific facts supporting an inference of fraud." *Dorsey*, 540 F.3d at 339.

A motion to dismiss based on a statute of limitations defense, is warranted only where it is evident from the face of the complaint that the action is barred. *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 196 (5th Cir. 2021). The burden of establishing the statute of limitations affirmative defense is on the party pleading it. *See id.* at 200.

### III.

### ANALYSIS

A.  *Statutory Standing to Bring Lanham Act Claims*

Responding Defendants first argue that Fitz does not have statutory standing[3] to bring the two Lanham Act counts—false association and false designation of origin—under 15 U.S.C. § 1125(a)(1)(A). Doc. 26, Am. Mot., 5. This statutory section of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause

---

[3] "Although statutory standing involves an inquiry into alleged injury, it is not synonymous with Article III standing. Instead, a motion to dismiss for lack of statutory standing is analyzed under Rule 12(b)(6), not Rule 12(b)(1)." *HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 339 (5th Cir. 2021).

> confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis added).

A person has statutory standing under § 1125(a) if her claim "fall[s] within the zone of interests protected by" the statute and her "injuries are proximately caused by the violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citation omitted).

Fitz has statutory standing under § 1125(a). He alleges that the band "Los Yaguaru de Angel Venegas," which he has managed for a long time, has toured in the United States since 1998. Doc. 1, Compl., ¶ 16. He has also alleged that Responding Defendants have brought their band to perform in the United States under the same name "Los Yaguaru de Angel Venegas," which has led to consumer confusion. *Id.* ¶¶ 23–26. Responding Defendants' use of the same name to perform Mexican band music in at least one overlapping state, Texas, is alleged to proximately cause Fitz reputational and monetary injuries. *See id.* ¶ 51. Such allegations are sufficient to show Responding Defendants proximately caused damage to Fitz. *See Lexmark Int'l*, 572 U.S. at 132.

These same allegations support the Court's finding that Fitz has standing to bring his common law unfair competition claim. *See RRK Foods Inc. v. Sree Nidhi Corp.*, No. 3:21-CV-2943-G, 2022 WL 3636676, at *4 (N.D. Tex. Aug. 23, 2022 ("In Texas, 'unfair competition is a common law tort that occurs when one business entity 'palms off' its products as those of another. The determinative question is whether the tortfeasor's practices are likely to mislead customers into

believing that the product emanates from or has been endorsed by the claimant.... [T]he test is likelihood of confusion.'" (quoting *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 725-26 (Tex. App. – Dallas 2015, no pet.)))).

Responding Defendants seek dismissal of the false association claims under the Lanham Act on the ground that Fitz has not alleged an injury to a commercial interest. Doc. 26, Am. Mot., 5–6. Responding Defendants do not believe Fitz can have such an injury to form a federal trademark right because he has a foreign trademark. *Id.* Moreover, they argue, the Mexican Marks went into use after Nuñez's mark. *Id.* In *Lexmark Int'l, Inc.*, the Supreme Court expressly imposed a pleading requirement for false advertising claims to fall within the Lanham Act's zone of interests: an injury to a commercial interest. 572 U.S. at 132. But lower courts are split on whether the commercial interest injury must be pled for the Lanham Act's other distinct claim of false association. At least one court in this Circuit has explicitly rejected the argument that false association claims require pleading a commercial injury. *See Red River Bancshares, Inc. v. Red River Emps. Fed. Credit Union*, No. CV 17-1370, 2019 WL 4727857, at *5 (W.D. La. Sept. 26, 2019). The Court finds the *Red River* court's textual analysis of *Lexmark* persuasive and agrees Fitz need not show an injury to a commercial interest to properly plead his false association claims.

Also in support of their commercial interest argument, Responding Defendants suggest the statutory standing rules for 15 U.S.C. § 1114 apply to claims brought under § 1125(a). Doc. 26, Am. Mot., 5 (citing case addressing claim under § 1114). However, they fail to offer any legal support for the proposition that the standing rules for § 1114 and § 1125(a) overlap. Indeed, these two provisions have different standing requirements. Standing under § 1114 requires a valid registered mark but standing under § 1125(a)(1)(A) protects against "infringement of even

unregistered marks." *Master Saddles Inc. v. Taylor*, No. 3:20-CV-3709-B, 2021 WL 1814697, at *3 (N.D. Tex. May 6, 2021) (Boyle, J.) (citing 5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:9 (5th ed. 2021)). Thus, the argument that Fitz has a foreign mark is unavailing.

Claims under § 1125(a)(1) are available to "any person who believes that he or she is likely to be damaged" by the prohibited conduct. *Id.* (quoting § 1125(a)(1)). Fitz has pled sufficient facts to show such damage is likely. That Nuñez purportedly used the US Mark first does not impact Fitz's standing to bring claims under § 1125(a).

B.  *Common Law Trademark Infringement*

Responding Defendants next challenge Fitz's standing to bring his common law trademark infringement claim because Fitz has "attach[ed] testamentary materials establishing Defendant Nuñez's prior and sole ownership of the Registered Mark over any purported common law rights that Plaintiff claims to possess." Doc. 26, Mot., 6. "The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017). Standing to bring a trademark infringement action under § 1114 is therefore an element of Fitz's common law trademark infringement claim. *See id.* "A plaintiff must establish ownership of a trademark to have standing to sue under 15 U.S.C. § 1114(1)." *Varsity Spirit LLC v. Varsity Tutors, LLC*, No. 3:21-CV-0432-D, 2021 WL 9893514, at *4 (N.D. Tex. Sept. 17, 2021) (Fitzwater, J.). Section 1114(1) only extends protections to a "registered mark," 15 U.S.C. 1114, which is defined as "a mark *registered* in the United States Patent and Trademark Office." 15 U.S.C. § 1127. The Complaint does not allege that Fitz holds any registered marks. Rather, he only holds applications to register the LOS

YAGUARU marks with the USPTO. Doc. 1, Compl., ¶ 20. These applications remain "pending" with the USPTO. *See* U.S. Trademark Application Serial Nos. 88414262 (filed Apr. 17, 2017) and 90778406 (filed June 16, 2021). Without a registered mark, Fitz lacks standing to bring a common law trademark infringement claim. *See Streamline Mfg., Inc.*, 851 F.3d at 450; *Varsity Tutors*, LLC, 2021 WL 9893514, at *6. Thus, the common law trademark infringement claim is dismissed. The Court need not address Responding Defendants' limitations arguments as to this claim.

C.      *Failure to State a Claim for Cancellation of Mark Based Fraud*

Fitz brings a cancellation of trademark registration claim, alleging that David obtained the US Mark through fraudulent statements to the USPTO. Doc. 1, Compl., ¶¶ 72–81. The petitioning party pleading cancelation must meet the requirements of Federal Rule of Civil Procedure 9(b). *Burnscraft Mfg. Corp. v. Nat'l Const. Rentals, Inc.*, No. CIV.A. H-13-2769, 2014 WL 1386300, at *4 (S.D. Tex. Apr. 9, 2014). A trademark application must include a verified statement by the applicant that to the best of his knowledge "the facts recited in the application are accurate" and that "no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C § 1051(a)(3)(B), (D). A trademark can be canceled for fraud where an applicant "knowingly makes false, material representations of fact in connection with his application." *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009). If a court determines that a trademark registrant has committed fraud to obtain registration of his mark, the court may order "cancelation of [the mark's] registration." 15 U.S.C. § 1119.

Fitz alleges David committed three acts of fraud to the USPTO when he applied to register the US Mark in 2012. Doc. 1, Compl., ¶¶ 75–77. First, David falsely averred that he knew of "no other person [that] ha[d] the right to use such mark in commerce" when he knew about Angel's continuous use of the same band name in conjunction with live music entertainment. *Id.* ¶ 75. Second, David falsely averred that "Angel Venegas" was David's pseudonym when he knew it was his brother's name. *Id.* ¶ 76. Third, David falsely held out the flyers containing the Mexican Mark, with Angel's face on the flyer, as being specimens of David's mark. *Id.* ¶ 77. Responding Defendants contend that Fitz has not stated his claim with the requisite particularity under Rule 9(b). Doc. 26, Am. Mot., 8–10.

The "who, what, when, and how" of the three alleged falsities are all supported within the USPTO record for the US Mark, which is appended to the Complaint. *Dorsey*, 540 F.3d at 339; *see generally* Doc. 1-1, Ex. A. With respect to the first falsity, on October 15, 2012, David, through his "Duly Authorized Officer" voluntarily amended his trademark application to swear that "to the best of his/her knowledge and belief no other person . . . has the right to use the mark in commerce . . . ." Doc. 1-1, Ex. A, 23. With respect to the second falsity, on August 6, 2012, David amended his application to aver that "Angel Venegas" was his alias. *Id.* at 50–55. This amendment was filed directly in response to the USPTO's flag that the application materials "contain[ed] the name 'Angel Venegas' and appear[ed] to identify a particular living individual" but "d[id] not include this named party's written consent to registration of the name as a service mark." *Id.* at 64, 72. With respect to the third falsity, the August 6, 2012 amendment also included "specimens" of David's mark that David represented as "copies of various flyers used when [his] group performed in various events." Doc. 1-1, Ex. A, 56, 59–63. The flyers contain a name resembling the Mexican

Marks with either one man behind the band name or the entire band. *See id.* 59–63. Fitz alleges the flyers contain the Mexican Marks and actually picture David's brother "Angel Venegas and his band." Doc. 1, Compl., ¶ 77.

The question that remains is whether Fitz has sufficiently pleaded facts that give rise to an inference that David knew each of the alleged misrepresentations was false when he made them to the USPTO. *See Burnscraft Mfg. Corp.*, 2014 WL 1386300, at *5. The Court finds that he has. Fitz alleges that Angel's, and now his, Mexican musical band played in the United States under the name Los Yaguaru de Angel Venegas "as early as the 1900s" and "has toured continuously since . . . as early as 1998 to the present in the United States". Doc. 1, Compl., ¶ 16. Fitz alleges Angel obtained the Mexican Marks of Los Yaguaru de Angel Venegas, with the earliest trademark obtained in 1997. *Id.* ¶ 18. Fitz alleges he and his predecessors-in-interest have "continuously used the [Mexican] Marks in commerce since as early as 1998 in connection with live performances of the musical group" *Id.* ¶ 21. Approximately 14 years later, David filed his trademark application for the US Mark, which has the same exact name as Angel's band and Fitz's Mexican Marks. *See generally* Doc. 1-1, Ex. A. David and Angel are alleged to be brothers. Doc. 1, Compl., ¶ 29. Angel's name is in the disputed marks. *E.g., id.* ¶¶ 18, 26 29. All of these allegations suffice to show that David knew of Angel and his successor-in-interest's consistent use of "Los Yaguaru de Angel Venegas" such that David knew of their potential right to use the mark in commerce. The allegations are also sufficient to show that David misrepresented his alias as "Angel Venegas." Finally, these allegations permit the reasonable inference that the "specimens" David offered were flyers depicting the Mexican Marks and Angel's band.

Thus, Fitz has properly stated a claim for cancellation of a trademark.

D. *Statute of Limitations*

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or the like." *Jones v. Deutsche Bank Nat'l Tr. Co.*, No. 3:15-CV-1038-N, 2015 WL 11120589, at *1 (N.D. Tex. Aug. 5, 2015) (Godbey, J.) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). The burden of establishing the statute of limitations defense is on the party pleading it. *Acad. of Allergy & Asthma in Primary Care*, 998 F.3d at 200. Here, Responding Defendants argue that all of Fitz's claims are time-barred but they have not met their burden.

Responding Defendants cite in support of their limitations argument *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 356 (5th Cir. 2011). Doc. 26, Am. Mot., 7. *Jaso* stands for the proposition that the Lanham Act includes no statute of limitations for trademark claims, so "courts apply the defense of laches to untimely claims." *Id.* However, a defendant bears the burden of establishing a laches defense. To prevail on a laches defense, a defendant must show "(1) delay in asserting one's trademark rights, (2) lack of excuse for the delay, and (3) undue prejudice to the alleged infringer caused by the delay." *Westchester Media v. PRL Holdings, Inc.*, 214 F.3d 658, 668 (5th Cir. 2000). A defendant can raise laches in a motion to dismiss, but a court should not grant a motion to dismiss based on laches unless the complaint affirmatively shows the claim is barred. *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958).

Notwithstanding the fact that Responding Defendants have not explicitly raised the laches defense, they have not met their burden. *Id.* The Court agrees with Fitz that the laches defense also is not apparent from the face of the Complaint. *See* Doc. 38, Resp., 8–9. Nor does the Motion to Dismiss raise the defense. *See PRL Holdings, Inc.*, 214 F.3d at 668. For example, Responding

Defendants have not shown how they are unduly prejudiced by the allegedly delayed claims. *See id.* Thus, the Court does not find the laches defense to bar Fitz's Lanham Act claims nor is "it is evident from [Fitz's] pleading that his claims are barred." *Jones*, 2015 WL 11120589, at *1.

There is additionally nothing in the Complaint that justifies dismissing the common law unfair competition claim as time-barred. Such claims are subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003(a). Fitz invokes the continuing tort doctrine to protect his claims from being time-barred. Doc. 38, Reply, 9–10. In Texas, unfair competition based on trademark infringement as a continuing tort, which means that the cause of action does not accrue until the allegedly wrongful conduct ends. *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-CV-0054-B, 2018 WL 1806500, at *8 (N.D. Tex. Apr. 17, 2018) (Boyle, J.) ("Texas law treats trademark-infringement as a 'continuing tort,'" (citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 812 (Tex. App.—Austin 2001, pet. denied))); *see also Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.*, 934 F. Supp. 796, 807 (S.D. Tex. 1996).

There is nothing in the Complaint to suggest that Responding Defendants' alleged infringement has ended. Fitz pleads only that "on occasions and more increasingly as of recently," Responding Defendants have advertised their concerts under Fitz's same band name and logo. *Compare* Doc. 1, Compl., ¶¶ 25–26, *with id.* ¶ 18. The Complaint thus suggests the alleged infringement is ongoing. Therefore, the Court declines to dismiss Fitz's common law unfair competition claim as time-barred. *See Scholastic Book Fairs, Inc.*, 2018 WL 1806500, at *8.

E.   *Accounting*

Fitz's last cause of action is for accounting "under the common law of the State of Texas." Doc. 1, Compl., ¶¶ 82–88. Responding Defendants argue that accounting is not a cause of action,

but rather an equitable remedy. Doc. 26, Mot., 10. Fitz responds that he has properly alleged "an entitlement of accounts of the Defendants' profits under 15 U.S.C. § 1117(a)." Doc. 38, Resp., 13. Alternatively, Fitz asks the Court to allow him to amend his pleading to seek this relief if the Court dismisses his accounting cause of action. *See id.* Responding Defendants are correct that accounting is not an independent claim, but "merely the means by which the value of . . . damages may be calculated." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 640 (5th Cir. 2003); *see also Watson v. Aurora Loan Servs. LLC*, No. 4:11-CV-301-BJ, 2012 WL 3594233, at *10 (N.D. Tex. Aug. 21, 2012) (Cureton, M.J.) ("[A]n accounting is an equitable remedy that is not an independent cause of action."). Therefore, the Court dismisses Claim V. Fitz's prayer for relief already seeks "accounting of all monies" and "damages . . . pursuant to 15 U.S.C. § 1117(a)." Doc. 1, Compl., 21. Therefore, leave to amend the Complaint to request accounting is not necessary.

## IV.

## CONCLUSION

In sum, Responding Defendants' motion to dismiss is **GRANTED** as to the common law trademark infringement claim, which is **DISMISSED WITHOUT PREJUDICE**. The accounting remedy is already accounted for in the Complaint, therefore it is **DISMISSED WITH PREJUDICE**. The motion to dismiss is **DENIED** as to the Lanham Act infringement claim, common law unfair competition claim, and cancelation of trademark claim.

SO ORDERED.

SIGNED: August 29, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE